```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 7 30 09
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
RICHARD OSUNA,                        :
                                      :
            Plaintiff,                :        08 Civ. 4759 (JSR)
                                      :
      -v-                             :
                                      :        MEMORANDUM ORDER
THE CITY OF NEW YORK, et al.,         :
                                      :
            Defendants.               :
------------------------------------x

JED S. RAKOFF, U.S.D.J.

      Plaintiff Richard Osuna brings suit under 42 U.S.C. § 1983

against defendants City of New York ("the City"), the New York City

Police Department ("NYPD"), and police officers Christopher

Jacobellis and William Holohan (collectively, the "City Defendants"),

as well as against defendants the Belmont Lounge and Sergio Alarcon.

Plaintiff alleges, in part, that the City Defendants falsely arrested

and maliciously prosecuted him, and unlawfully denied him medical

care for certain injuries he allegedly sustained on May 22, 2007.

The City Defendants moved, pursuant to Fed. R. Civ. P. 56, for

summary judgment dismissing all of plaintiffs' claims.  After

reviewing the parties' briefs and hearing oral argument, the Court,

by Order dated February 3, 2009, granted the City Defendants' motion

in its entirety.  This Memorandum explains the reasons for that Order

and directs the entry of final judgment.

      The instant action arises out of plaintiff's arrest on May

22, 2007 in front of the Belmont Lounge, 117 East 15th Street, in

Manhattan.  Declaration of Benjamin Stockman in Support of the City

of New York, NYPD, Jacobellis and Holohan's Motion for Summary

Judgment ("Stockman Decl.") Ex. F.  Plaintiff had consumed at least four alcoholic drinks that night, id. Ex. E at 48-53, although he claims that he was not intoxicated.  Declaration of Victor M. Brown in Support of Opposition ("Brown Decl.") Ex. 7 ¶ 4.  Plaintiff exited the bar next door to the Belmont Lounge carrying a beer in an open pint glass and stopped on the sidewalk in front of the lounge with the beer still in hand.  Stockman Decl. Ex. E at 57-60.  After plaintiff stepped outside, defendant Alarcon, an employee of the lounge, told plaintiff that he could not remain in front of the lounge, and ordered him to move along.  Defendant City of New York, New York City Police Department, Jacobellis and Holohan's Statement of Undisputed Facts Pursuant to Local Civil Rule 56.1 ("Def. 56.1") ¶ 6; Opposition Corresponding Statement of Undisputed Facts Pursuant to Local Rule 56.1 ("Pl. 56.1") ¶ 6.  Plaintiff testified that Alarcon came out of the lounge yelling and screaming.  Brown Decl. Ex. 3, at 60-61.  A physical altercation ensued between plaintiff and Alarcon, Def. 56.1 ¶ 7; Pl. 56.1 ¶ 7, and plaintiff claims that he was forced to the ground and was not allowed off the ground until police officers arrived.  Def. 56.1 ¶ 8; Pl. 56.1 ¶ 8.

Sometime between 10:45 pm and 11:45 pm, officers Jacobellis and Holohan received a radio call indicating an assault in progress in front of the Belmont Lounge.  Stockman Decl. Ex. B ¶ 13, Ex. C ¶ 11, Ex. D, Ex. F.  When the officers arrived at the scene, they saw plaintiff being restrained on the ground and acting in a hostile, belligerent manner.  Id. Ex. B ¶ 15, 18, Ex. C ¶ 14-15.  Both

2

officers heard plaintiff yelling obscenities and observed that plaintiff was intoxicated based on his slurred speech and the odor of alcohol coming from him. <u>Id.</u> Ex. B ¶ 16, Ex. C. ¶¶ 13-16.  Officer Holohan then grabbed plaintiff by the arm and placed him in the police cruiser. <u>Id.</u> Ex. E at 102.

While in the police cruiser, plaintiff observed a bald-headed officer (Officer Jacobellis) speaking with Alarcon for about a minute. <u>Id.</u> Ex. E at 105.  Although plaintiff could not hear the substance of the conversation, <u>id.,</u> Alarcon affirms that he told the officers that (1) he had asked plaintiff to go inside because he was holding an open container, Brown Decl. Ex. A ¶ 7; (2) plaintiff appeared intoxicated, slurred his speech, and became enraged, <u>id.</u> ¶¶ 8-11, 13; (3) plaintiff moved toward a bar patron in a threatening manner and was poised to throw his glass, <u>id.</u> ¶ 12; (4) plaintiff grabbed hold of a sign on the sidewalk and attempted to throw it at Alarcon; <u>id.</u> ¶¶ 14-15; (5) plaintiff fell, grabbed Alarcon's clothing, and dragged him down a short flight of stairs, <u>id.</u> ¶ 16; (6) plaintiff then became increasingly violent and Alarcon accordingly restrained him, <u>id.</u> ¶ 18; and (7) Alarcon then requested that the manager call the police. <u>Id.</u> ¶ 18.  Plaintiff disputes this characterization of events, Brown Decl. Ex. 7 ¶¶ 5-8, but cannot dispute the nature of Alarcon's conversation with Officer Jacobellis, because he did not hear that conversation. Stockman Decl. Ex. E at 105.  Several other witnesses, however, corroborated Alarcon's story. <u>Id.</u> Ex. B ¶ 23.

3

In light of the foregoing, plaintiff was arrested and transported to an NYPD precinct. Id. Ex. E at 110, Ex. F.  At the time of his arrest, plaintiff was visibly bleeding from the head, his eye was turning red, and he had other unspecified contusions. Id. Ex. E at 102-04.  Plaintiff did not, however, specifically describe his injuries to the arresting officers. Id. at 104.  Although plaintiff claims that Officer Holohan escorted him to Carbini Medical Center for treatment of these injuries approximately two hours after his arrest, id. at 103-04, hospital records indicate that he was admitted at midnight, i.e., somewhere between 15 and 75 minutes after his arrest. Id. Ex. H.

At Cabrini, a doctor used staples to treat a laceration to plaintiff's head, id. Ex. E at 121, and a registered nurse checked plaintiff's blood pressure, pulse, temperature, and other vitals, and noted no signs of distress in plaintiff's appearance other than the laceration to his head. Id. Ex. H.  The physician report notes that plaintiff was intoxicated and had a laceration to the head, but confirms that plaintiff's eyes appeared normal and does not indicate any other injuries. Id. Ex. I.

Plaintiff claims that Officer Holohan told medical personnel to treat plaintiff only for the "cut to his head, nothing else," and that Officer Holohan refused to allow medical personnel to x-ray or perform a CAT scan of plaintiff's head or otherwise check for a concussion or other head injury.  Def. 56.1 ¶ 32, Pl. 56.1 ¶ 32.  At his deposition, however, plaintiff testified that Officer Holohan told plaintiff that he was only there to have the cut on his head

4

treated, and plaintiff failed to articulate any specific description
of how the officer prevented doctors from treating plaintiff.
Stockman Decl. Ex. E at 121-27.  Instead, plaintiff testified that
when the doctor arrived, he treated plaintiff for the cuts on his
head, and then left the room.  Id. at 121.  Although plaintiff
contends that his eye was red and injured, the physician's report
notes that plaintiff's eye appeared normal.  Id. Ex. I.  Plaintiff
refused to sign an authorization for treatment, id. Ex. L,
purportedly because he was not allowed to read the documents prior to
signing them.  Brown Decl. Ex. 3 at 126.  Plaintiff thereafter was
cleared for discharge.  Stockman Decl. Ex. J.  Plaintiff refused
medical care after being taken to central booking, id. Ex E at 138,
but only because he was informed by an unnamed New York City employee
that medical treatment would delay his appearance before a judge.
Brown Decl. Ex. 3 at 138.  Plaintiff was arraigned the next day.
Stockman Decl. Ex. E at 139.

        The charges against plaintiff were dismissed on February 25,
2008 on Speedy Trial Grounds.  Id. Ex. M.

        Turning to plaintiff's state and federal claims for false
arrest, the elements of which are substantially the same under both
United States and New York law, Weyant v. Okst, 101 F.3d 845, 852 (2d
Cir. 1996), plaintiff must prove that (1) a defendant intended to
confine plaintiff; (2) plaintiff was conscious of the confinement;
(3) plaintiff did not consent to the confinement; and (4) the
confinement was not otherwise privileged.  Singer v. Fulton Cty.
Sheriff, 63 F.3d 110, 118 (2d Cir. 1995).  Probable cause, however,

is a complete defense to an action for false arrest under either section 1983 or state law. Covington v. City of N.Y., 171 F.3d 117, 122 (2d Cir. 1999); see Weyant, 101 F.3d at 852 ("[t]he existence of probable cause to arrest constitutes justification and 'is a complete defense to an action for false arrest'") (citation omitted). Probable cause exists "when the arresting officer has knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." Singer, 63 F.3d at 119. In assessing probable cause, courts thus focus on the facts available to the officer at the time of the arrest, Riccuiti v. New York City Transit Auth., 124 F.3d 123, 128 (2d Cir. 1997), so long as it was reasonable for the arresting officer to rely on those facts. See Bernard v. United States, 25 F.3d 98, 103 (2d Cir. 1994).

Here, it is beyond cavil that Officers Jacobellis and Holohan had probable cause to arrest defendant, thus warranting dismissal of plaintiff's claim for false arrest. First, when the officers arrived at the Belmont Lounge, Alarcon positively identified plaintiff as the perpetrator of an assault. Officer Jacobellis conferred with Alarcon individually, Alarcon recounted his version of the events (including describing how plaintiff appeared intoxicated, was belligerent, and assaulted him), and several bystanders corroborated Alarcon's story. Plaintiff has failed to offer any evidence demonstrating that the officers had any reason to doubt Alarcon's reliability. Moreover, when the officers arrived at the Belmont Lounge, they observed that plaintiff appeared intoxicated, smelled of alcohol, and was yelling

6

obscenities and threats at Alarcon, further corroborating Alarcon's assertions.  Because the arresting officers therefore had more than probable cause to believe that plaintiff had committed a criminal offense, plaintiff's false arrest claim must be dismissed.  <u>See Curley v. Village of Suffern</u>, 268 F.3d 65, 68 (2d Cir. 2001) ("[w]hen information is received from a putative victim or an eyewitness, probable cause exists . . . unless the circumstances raise doubt as to the person's veracity") (citations omitted); <u>see</u> <u>Marin v. Viggiani</u>, 92 Civ. 3836, 1993 U.S. Dist. LEXIS 14056, at *20-21 (S.D.N.Y. Oct. 4, 1993) (when a "victim precisely identifies the alleged perpetrator of a crime and there is independent corroborative evidence to support at least some of the victim's assertions, a person of reasonable caution is warranted in believing that an offense has been committed by the alleged perpetrator").

Plaintiff's malicious prosecution claims likewise must be dismissed.  To state a claim for malicious prosecution under state or federal law, plaintiff must show that (1) the defendant commenced or continued a criminal proceeding against plaintiff; (2) the proceeding was terminated in plaintiff's favor; (3) there was an absence of probable cause for the proceeding; and (4) the proceeding was instituted with malice.  <u>Kinzer v. Jackson</u>, 316 F.3d 139, 143 (2d Cir. 2003).

As to the first element, it is well-established that "the mere reporting of a crime . . . and giving testimony are insufficient" to constitute the initiation of a criminal proceeding. <u>Rohman v. New York City Transit Auth.</u>, 215 F.3d 208, 217 (2d Cir.

7

2000).  Instead, plaintiff must establish that defendants "played an active role in the prosecution, such as giving advice and encouragement or importuning the relevant authorities to act."  Id. (quotation and citation omitted).  Here, however, the undisputed evidence demonstrates that the defendant officers did nothing more than report an alleged crime and disclose all material information within their knowledge.  Although plaintiff contends that Officer Jacobellis fabricated the allegations against plaintiff, the facts set forth in the Criminal Court complaint, see Brown Decl. Ex. 2, are entirely consistent with those set forth by Alarcon in his affidavit. See Stockman Decl. Ex. A.  Because "[o]ne who does no more than disclose to a prosecutor all material information within his knowledge is not deemed to be the initiator of the proceeding," Present v. Avon Prods., Inc., 687 N.Y.S.2d 330, 335 (1st Dep't 1999), plaintiff's malicious prosecution claim must be dismissed.

Further, as to the third element of a claim for malicious prosecution, viz., the absence of probable cause, it is undisputed that "probable cause to arrest is sufficient for probable cause to prosecute unless facts come to light between the arrest and arraignment that vitiate the probable cause."  Smith v. City of N.Y., 388 F. Supp. 2d 179, 185 (S.D.N.Y. 2005).  Here, as noted, plaintiff's arrest was supported by probable cause, and there is no evidence that any facts came to light between when plaintiff was arrested on May 22, 2007, and his arraignment on May 23, 2007, that vitiated probable cause, nor is there any evidence of bad faith on behalf of defendants.

Finally, as to the fourth element, courts generally interpret "malice" to be the commencement or continuation of a prosecution for an improper motive, i.e., for a reason other than to see that justice is served. <u>Lowth v. Town of Cheektowaga</u>, 82 F.3d 563, 573 (2d Cir. 1996). Malice may be inferred from a lack of probable cause. <u>Sulkowska v. City of N.Y.</u>, 129 F. Supp. 2d 274, 295 (S.D.N.Y. 2001). Here, however, in addition to the fact that there was probable cause for plaintiff's arrest and prosecution, there is no evidence that defendants acted out of an improper motive. Accordingly, for this and all of the foregoing reasons, plaintiff's malicious prosecution claim must be dismissed.

Turning next to plaintiff's deliberate indifference claims, it is undisputed that the government has an obligation "to provide medical care for those whom it is punishing by incarceration." <u>Estelle v. Gamble</u>, 429 U.S. 97, 103 (1976); <u>Bryant v. Maffucci</u>, 923 F.2d 979, 983 (2d Cir. 1991). In order to succeed on such a claim, plaintiff must satisfy both objective and subjective components: "Objectively, the alleged deprivation must be sufficiently serious, in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists. Subjectively, the charged official must act with a sufficiently culpable state of mind." <u>Hathaway v. Coughlin</u>, 99 F.3d 550, 553 (2d Cir. 1996).

As to the objective component, an inmate's medical needs are considered serious "if the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." <u>Estelle</u>, 429 U.S. at 104. Uncomfortable

9

conditions that do not threaten death or basic functioning, however, are insufficient to satisfy the objective component. Hemmings v. Gorczyk, 134 F.3d 104, 108 (2d Cir. 1998) (noting that "the alleged deprivation must be sufficiently serious, in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists"). Here, although plaintiff alleges that he suffered injuries as a result of being hit in the head and face by Alarcon, a registered nurse checked plaintiff's vital signs and noted no signs of distress in plaintiff's appearance other than the laceration to his head. Furthermore, a doctor cleared plaintiff for discharge. In such circumstances, the mere drawing of blood, without more, fails to amount to "a medical condition that significantly affects an individual's daily activities." Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998); see Lumaj v. Williams, 03 Civ. 1849, 2004 U.S. Dist. LEXIS 8178, at *1, *10-13 (S.D.N.Y. May 6, 2004) (plaintiff failed to allege a sufficiently serious injury where he was slashed in the face, head, arms, chest, and hands, and suffered permanent scarring); Sonds v. St. Barnabas Hosp. Corr. Health Serv's, 151 F. Supp. 2d 303, 311 (S.D.N.Y. 2001) (holding that a cut finger, even where the skin was "ripped off," was not a sufficiently serious injury); Hernandez v. Strack, No. 96 Civ. 417, 1997 WL 137439, at *4-5 (S.D.N.Y. Mar. 25, 1997) (granting summary judgment to defendants where plaintiff received a wound in a fight that required sutures, but where "the scarring on plaintiff's neck and shoulder is not a condition that may produce death, degeneration or extreme pain").

Plaintiff likewise has failed to satisfy the subjective component of a deliberate indifference claim, which requires a showing that an official "knows of and disregards an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 837 (1994). Specifically, plaintiff has failed to point to any evidence demonstrating that defendants denied him medical treatment, or that any alleged "delay" in treatment was the result of defendants' deliberate indifference. To the contrary, the undisputed evidence shows that plaintiff was arrested no earlier than 10:45 p.m. on May 22, 2007, and that he was admitted to Cabrini at midnight, no later than 75 minutes after his arrest, and plaintiff has not pointed to any evidence demonstrating that his visible injuries were so urgent as to require any more immediate attention. See, e.g., Basnight v. Rossi, 97 Civ. 1312, 2003 U.S. Dist. LEXIS 2911, at *7 (S.D.N.Y. Mar. 4, 2003) (treatment of broken nose four hours after arrest does not amount to deliberate indifference); Universal Calvary Church v. City of N.Y., No. 96 Civ. 4606, 2000 U.S. Dist. LEXIS 15153, at *34 n.18, *35 (S.D.N.Y. Oct. 13, 2000) ("medical attention within one and one-half to two hours" of plaintiff's injuries does not amount to denial of medical treatment, where plaintiff was "bleeding from his mouth, forehead, upper lip, and elbow," and was brought to the hospital only after losing consciousness).

Further, although plaintiff alleges that Officer Holohan prevented plaintiff from receiving necessary medical care upon arrival at Cabrini, plaintiff has failed to offer any evidence in support of his theory. Indeed, a close reading of plaintiff's

11

deposition testimony merely indicates that <u>after</u> the doctor treated plaintiff and left the room, Officer Holohan told <u>plaintiff</u>, not the doctor, that plaintiff was "only" there to be treated for his head injuries.  Moreover, contrary to plaintiff's unsupported allegations, plaintiff's hospital records unequivocally indicate that plaintiff's vitals were taken, a nurse observed no distress in plaintiff's appearance other than his intoxication and laceration, plaintiff's eyes appeared normal, and that a physician cleared plaintiff for discharge.  In the absence of any evidence that any of the City Defendants knew of and disregarded an "excessive risk" to plaintiff's health or safety, summary judgment dismissing plaintiff's deliberate indifference claim is warranted.

        Plaintiff also asserts a procedural due process claim, alleging that he was "falsely charged" by defendants and received "more punitive treatment" than was warranted or appropriate.  Amended Complaint ¶ 24.  This claim is based on the same conduct that gave rise to plaintiff's now-dismissed false arrest and malicious prosecution claims, however, thus requiring plaintiff's procedural due process claim to be dismissed as both duplicative and meritless. See <u>Ambrose v. City of New York</u>, 02 Civ. 10200, 2009 U.S. Dist. LEXIS 27498, at *50 n.9 (S.D.N.Y. Mar. 31, 2009) (noting that plaintiff could not "state a claim for the violation of his procedural due process rights," because such a claim was subsumed in his claims for false arrest and malicious prosecution"); <u>Hickey v. City of New York</u>, 01 Civ. 6506, 2004 U.S. Dist. LEXIS 23941, at *65 (S.D.N.Y. Nov. 24, 2004) (dismissing plaintiffs' procedural due process claims as

duplicative of their claims for false arrest); cf. Albright v. Oliver, 510 U.S. 266, 274 (1994) (plurality opinion) ("The Framers considered the matter of pretrial deprivations of liberty and drafted the Fourth Amendment to address it").

        Officers Jacobellis and Holohan are likewise entitled to summary judgment dismissing plaintiff's federal constitutional claims on the grounds of qualified immunity.  Qualified immunity shields "government officials performing discretionary functions . . . insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  The primary "concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular police conduct," Saucier v. Katz, 533 U.S. 194, 205 (2001), and qualified immunity thus "protects all but the plainly incompetent or those who knowingly violated the law."  Id. at 202 (quotation omitted).  Here, defendants are entitled to qualified immunity because, as noted, plaintiff has failed to demonstrate that he was falsely arrested, maliciously prosecuted, or unlawfully denied medical care, or otherwise suffered any other violation of a Constitutional right.  Further, even assuming that plaintiff has a cognizable claim for false arrest (which he does not), defendants acted reasonably in determining that probable cause existed, based on information provided to them at the time of plaintiff's arrest.  See Anderson v. Creighton, 483 U.S. 635, 641 (1987) ("it is inevitable that law enforcement officials will in some cases reasonably but

13

mistakenly conclude that probable cause is present, and . . . should
not be personally liable"); Coons v. Casabella, 284 F.3d 437, 440 (2d
Cir. 2002) (a police officer is entitled to qualified immunity
whenever it is "objectively reasonable for the officer to believe
that probable cause existed" or "officers of reasonable competence
could disagree on whether the probable cause test was met") (citation
and quotation omitted).

      Although plaintiff makes no argument regarding Officer
Holohan's qualified immunity defense, he does argue that Officer
Jacobellis should not be afforded immunity because (1) plaintiff
displayed injuries when arrested; (2) Officer Jacobellis allegedly
made false statements in the Criminal Court complaint against
plaintiff; and (3) Jacobellis allegedly refused to allow plaintiff to
press charges against Alarcon and refused to speak with plaintiff's
co-worker at the scene of the accident. See Memorandum of Law in
Opposition to Defendant's Summary Judgment Motion, at 5-7.  The
presence of injuries, however, is only one of the many factors that
officers take into account when determining whether to arrest an
alleged perpetrator of a crime, see Maryland v. Pringle, 540 U.S.
366, 371 (2003), and the injuries allegedly suffered by plaintiff did
not vitiate the existence of probable cause in this case.  Further,
as noted, no evidence support plaintiff's contention that Officer
Jacobellis fabricated any allegations against plaintiff.  Finally,
plaintiff has no constitutional or statutory right to ensure
Alarcon's arrest or to require Officer Jacobellis to speak to each
and every potential witness.  Indeed, once a police officer has a

                                  14

reasonable basis to believe that there is probable cause to arrest, the officer is not required to explore or eliminate every theoretically plausible claim of innocence before making an arrest. Panetta v. Crowley, 460 F.3d 388, 395-96 (2d Cir. 2006).  In short, because plaintiff has failed to demonstrate how any of his rights were violated, Officers Holohan and Jacobellis are entitled to qualified immunity.

Plaintiff's claims against the NYPD also fail for the separate and independent reason that the NYPD lacks independent legal existence, and is thus a non-suable entity.  Specifically, the New York City Charter provides that "all actions and proceedings for the recovery of penalties for the violations of any law shall be brought in the name of the City of New York and not in that of any agency." N.Y. City Charter, Ch. 16 § 396.  Accordingly, it is "widely held" that the NYPD, like other city agencies, is not a suable entity. Bailey v. New York City Police Dep't, 910 F. Supp. 116, 117 (E.D.N.Y. 1996); see Rossi v. New York City Police Dep't, No. 94 Civ. 5113, 1998 U.S. Dist. LEXIS 1717, at *14-15 (S.D.N.Y. Feb. 17, 1998) ("the New York City Police Department is an organizational subdivision of the City of New York, lacking independent legal existence and as such is not a suable entity"); see also Adams v. Galletta, 966 F. Supp. 210, 212 (S.D.N.Y. 1997) (dismissing action against New York City Department of Corrections).

Plaintiff's state and federal claims against the City of New York likewise fail.  First, because plaintiff has failed to show that Officers Jacobellis and Holohan committed any violations, plaintiff's

15

corresponding causes of action against the City are rendered moot. City of L.A. v. Heller, 475 U.S. 796, 799 (1986); see Khan v. Ryan, 145 F. Supp. 2d 280, 285 (E.D.N.Y. 2001) ("If there is no underlying constitutional violation by a municipal official, the municipality is not liable [on a Monell claim]").  Further, even if plaintiff had shown a violation (which he has not), plaintiff has nevertheless failed to offer any evidence that this putative violation was the result of an unlawful municipal policy or practice, a "fatal" flaw to plaintiff's claims against the City.  Griffin v. City of N.Y., 287 F. Supp. 2d 392, 395 (S.D.N.Y. 2003); see Riccuiti v. N.Y. City Transit Auth., 941 F.2d 119, 123 (2d Cir. 1991) ("a single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy").[1]

　　　Based on the foregoing, all of plaintiff's state and federal claims against all the City Defendants must, and hereby are, dismissed with prejudice.  In the absence of any viable federal claims, the Court declines to exercise pendent jurisdiction over plaintiff's remaining state law claims against the non-City

---

[1] Although plaintiff contends that the City had a policy of keeping defendants in handcuffs while receiving medical treatment, he has failed to demonstrate how such a policy violated state or federal law.  Indeed, to the contrary, plaintiff has no absolute right not be placed in handcuffs.  Cf. Soares v. Connecticut, 8 F.3d 917, 922 (2d Cir. 1993) ("there is still no clear authority on whether and under what circumstances, if any, a person has a constitutional right not to be handcuffed in the course of an arrest").  To the extent that such a claim could be one of Constitutional dimensions, the record is devoid of any evidence demonstrating that such a policy, as applied to plaintiff, prevented him from receiving necessary medical treatment.

defendants.  See Marcus v. AT&T Corp., 138 F.3d 46, 57 (2d Cir. 1998)

("In general, where the federal claims are dismissed before trial,

the state claims should be dismissed as well").  The Clerk of the

Court is therefore directed to enter judgment dismissing the case in

its entirety and closing document number 10 on the docket of this

case.

      SO ORDERED.

                            _____
                            JED S. RAKOFF, U.S.D.J.

Dated:  New York, New York
       July 28, 2009